STATE of Iowa, Appellee,

v.

James Michael TAYLOR, Appellant.

No. 67938.

Supreme Court of Iowa.

July 20, 1983.

Francis C. Hoyt, Jr., Appellate Defender, and Patrick R. Grady, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen. and David H. Correll, Black Hawk County Atty., for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

Defendant James Michael Taylor appeals from his conviction by jury of two counts of murder in the first degree in violation of Iowa Code section 707.2 (1981). He contends that the trial court erred in several evidentiary rulings, in denying his motion

for mistrial based on alleged misconduct by the prosecutor, and in denying his motion for new trial based on cumulative individual errors. We affirm the trial court.

The State charged defendant as the result of an incident in which two Waterloo police officers were shot and killed at about midnight on July 12, 1981. Defendant's motion for change of venue based on extensive publicity surrounding the case was granted, and trial was transferred to Pottawattamie County. Defendant filed a notice of diminished responsibility by virtue of alcohol and drug intoxication, identifying the names of five lay witnesses whom he expected to call.

During the trial, the court made several evidentiary rulings which defendant claims constituted prejudicial error. From the evidence which was admitted without objection, the jury could reasonably have found beyond a reasonable doubt that on the night of the incident two Waterloo policemen, Michael Hoing and Wayne Rice, stopped at a Waterloo residence in answer to a complaint about loud music. When the music was turned off and the officers left the residence area, two persons on the porch of the residence began yelling at and cursing the officers. The officers sought to arrest one of those persons, a struggle ensued, and one officer was knocked to the ground. Defendant, who had ingested both drugs and alcohol that evening, ran from the side yard to assist his friends, obtained officer Rice's gun and fired several shots, fatally wounding both officers. Further facts are presented to the extent pertinent to each separate issue raised by defendant.

I. *Exclusion of Testimony of a Defense Witness.* Defendant contends that the trial court erred in refusing to allow him to call as an expert witness at trial Dr. Stan Moore, an expert on the effects of drug and alcohol consumption. He contends that the trial court improperly applied the preclusion sanction contained in Iowa Rule of Criminal Procedure 10(10)(d) (1981), both because defendant had shown good cause for late filing of the name of the witness and because the defense of intoxication is covered by

rule 10(10)(c), not rule 10(10)(b), and does not specifically require the listing of witnesses.

Iowa R.Crim.P. 10(10) [now rule 10(11)] provided in pertinent part:

b. *Insanity and diminished responsibility*

(1) Defense of insanity and diminished responsibility. If a defendant intends to rely upon the defense of insanity or diminished responsibility at the time of the alleged crime, the defendant shall, within the time provided for the filing of pretrial motions, file written notice of such intention. The court may for good cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(2) State's right to expert examination. Where defendant has given notice of the use of the defense of insanity or diminished responsibility and intends to call an expert witness or witnesses on that issue at trial the defendant shall, within the time provided for the filing of pretrial motions, file written notice of the name of each such witness. Upon such notice or as otherwise appropriate the court may upon application order the examination of the defendant by a state-named expert or experts whose names shall be disclosed to the defendant prior to examination.

c. *Intoxication, entrapment, and self-defense.* If defendant intends to rely upon the defense of intoxication by drugs or alcohol, entrapment, or self-defense, the defendant shall, within the time for filing pretrial motions, file written notice of such intention. The court may for good cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

d. *Failure to comply.* If either party fails to abide by the time periods heretofore described, such party may not offer evidence on the issue of alibi, insanity,

diminished responsibility, intoxication, entrapment, or self-defense without leave of court for good cause shown. In granting leave, the court may impose terms and conditions including a delay or continuance of trial. The right of a defendant to give evidence of alibi, insanity, diminished responsibility, intoxication, entrapment, or self-defense in his own testimony is not limited by this rule.

Within the time provided for filing motions, defendant had filed a Notice of Diminished Responsibility by Virtue of Alcohol and Drug Intoxication, listing the names of five lay witnesses but not listing the name of Dr. Moore or any other expert witness. The notice stated that it was given "under Rule 10.10(b)(1)." Trial commenced on October 13, 1981 with the jury sworn on October 14 and the presentation of evidence commencing on October 15. On October 20, 1981, defendant moved for permission to have Dr. Moore examine defendant, stating for the first time that Moore would be an expert witness on the effects of drugs and alcohol. The State vigorously resisted, contending that the notice was late and constituted unfair surprise. In response, defense counsel conceded that he recognized his ongoing responsibility to inform the State of any other witnesses he intended to call, but he offered several excuses for giving late notice. He said he had had difficulty locating a witness in the Council Bluffs area, his first choice for an expert "had fallen through", and he expected that any trial delay would be minor even if the State were granted a continuance to depose Dr. Moore.

The trial court initially stated that Dr. Moore would be allowed to examine the defendant, with the State allowed to interview or depose him and with the decision as to whether to allow the expert's testimony dependent upon the nature of the testimony. The court cautioned that it was "doubtful" that the witness would be allowed to testify. Later in the day, the court denied the request for examination. The trial court first elaborated upon the considerable length of time that had passed since the Notice of Diminished Responsibility was filed. The court noted that the first notice of expert witness was not given until one week after trial commenced and concluded that the defendant's request was "just too late under rule 10".

■ A. *Notice under rule 10(10)(b).* Defendant contends that he had shown good cause for giving late notice of the intention to call an expert witness on the defense of diminished responsibility. Both rule 10(10)(b)(1) concerning late filing of the notice and rule 10(10)(d) provide that the court may "for good cause shown" relax the requirements of notice or permit testimony notwithstanding late notice. In that regard, the rules are similar to Iowa R.Crim.P. 10(10)(a) requiring notice of evidence of an alibi defense. What this court said in *State v. Christensen*, 323 N.W.2d 219 (Iowa 1982) with respect to "good cause" in the case of a belated notice of an alibi witness applies equally here. What constitutes good cause is a discretionary decision of the trial court; the defendant has the burden to show that the trial court abused its discretion. 323 N.W.2d at 223–24. Rules requiring advance notice of such defenses as alibi and diminished responsibility are justified by the need to balance the interest of the defendant in a full and fair trial against the interest in protecting the State from unfair surprise and delays. *See Williams v. Florida*, 399 U.S. 78, 81–82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446, 450 (1970); *United States v. Barron*, 575 F.2d 752, 757 (9th Cir.1978).

■ Our independent analysis of the good cause standard in rule 10(10)(b)(1) satisfies us that the defendant did not establish good cause for an exception to the rule of exclusion provided by rule 10(10)(d). Late notice prejudiced the State, because once trial had proceeded for a week, the State would not have normal opportunity to investigate the veracity and basis for the expert witness's testimony. Had the defendant's request for a continuance been granted there would have been an unfair delay in the trial between presentation of most of the State's evidence and the de-

fendant's evidence as to diminished responsibility. Moreover, defendant did not satisfactorily show that the expert witness could not have been identified and a basis for his testimony established well before trial began. Over six weeks before trial began, the court had ordered that venue be transferred to Pottawattamie County, with trial scheduled to commence on October 13.

B. *Notice under rule 10(10)(c).* Defendant also contends that the trial court incorrectly denied the motion to allow testimony of Dr. Moore by applying rule 10(10)(b) rather than rule 10(10)(c). Defendant argues that because the latter rule does not compel pretrial disclosure of expert witnesses, but only notice that the defense of intoxication by drugs or alcohol is relied upon, the trial court had no authority to exclude the expert witness once notice had been given. Defendant argues that in the absence of a specific exclusionary sanction, general provisions of rule 12(3) apply. The usual sanction for late disclosure of witnesses would then be the granting of a continuance subject to the State's right to depose such witnesses.

■ It is true that preclusion of defense testimony is usually not an authorized remedy for failure to comply with rule 12(3), because the rule does not contain an express exclusion sanction. *State v. Marchellino*, 304 N.W.2d 252, 256 (Iowa 1981). We believe, however, that the specific exclusionary sanction in rule 10(10)(d) applies both to the defenses of diminished responsibility and intoxication by drugs or alcohol. That rule does not distinguish between those two defenses, even though witnesses must be listed with respect to the diminished responsibility defense and not as to intoxication alone. Even if we were to decide that the State reasonably understood the notice under rule 10(10)(b)(1) to be an intoxication defense rather than one of diminished responsibility, we would uphold the trial court's exclusion ruling because the notice requirements of rule 10(10)(c) were not met. The State could not reasonably be expected to read out of defendant's "notice of diminished responsibility by virtue of alcohol and drug intoxication", filed "under rule 10(10)(b)", the words "diminished responsibility by virtue of" or the citation of that specific subsection. The State, and the trial court, reasonably understood that the defense in issue was one of "diminished responsibility", requiring the listing of the expert witness Moore. Under rules 10(10)(b) and 10(10)(d), the sanction was preclusion unless the court in its discretion determined that good cause had been shown to admit the evidence. The trial court did not abuse its discretion in holding that alternate sanctions were not appropriate and should not be granted. *State v. Christensen*, 323 N.W.2d at 224.

II. *Admission of Defendant's Pretrial Statements.* Defendant alleges that the trial court erred in admitting statements made by him to Waterloo police detectives on the night of his arrest and while he was undergoing a court-ordered blood test in the Black Hawk county jail. At that time, the defendant asked to talk with the "D.A." Although the County Attorney was called, the defendant was interviewed by two detectives who said they would give the information to the County Attorney. The defendant then proceeded to tell the detectives that he wanted to plead guilty. Defendant contends that the statements were made during a plea negotiation and therefore were privileged in accordance with Iowa R.Crim.P. 9(5) which prohibits the introduction of plea discussions into evidence in subsequent proceedings.

First, we hold that this issue was not preserved for appellate review. The contention that defendant's statements were part of a plea negotiation and privileged appears for the first time in defendant's appellate brief. Defendant had filed a timely motion to suppress, but his only theory for excluding the statements was that they were not voluntary.

■ When the court and counsel discussed at the opening of the trial what references could be made in opening statements to the admissions, and again when the admissions were offered at trial, defense counsel's objection related only to vol-

untariness and "the prejudicial impact" of defendant's words that he wanted to plead guilty. Neither during the trial nor in post-trial motions did defendant assert that the statements were in any way privileged or subject to rule 9(5). Matters not raised in the trial court will not be considered on appeal. *State v. Morehouse,* 316 N.W.2d 884, 886 (Iowa 1982); *State v. Jump,* 269 N.W.2d 417, 430 (Iowa 1978).

Although unnecessary in view of our ruling that the issue was not preserved for appeal, we are satisfied that the record reflects no error in the trial court's admission of the statements. Not all discussions with a defendant in which he mentions the word "plea" or offers to confess are privileged. The law provides that plea discussions and resulting agreements, pleas or judgments are privileged in order to encourage active plea negotiations; meaningful dialogue between the parties would be impossible if either party had to assume the risk that the offers would be admitted in evidence. *United States v. Verdoorn,* 528 F.2d 103, 107 (8th Cir.1976). The privilege is accorded only those discussions entered into with a view toward reaching an agreement whereby the defendant will enter some plea in the hope of receiving certain charge or sentence concessions. *United States v. Jimenez-Diaz,* 659 F.2d 562, 568 (5th Cir.1981). In one case interpreting Fed.R.Crim.P. 11(e)(6), the federal rule which is similar to Iowa rule 9(5), the United States Court of Appeals for the Fifth Circuit formulated a test we here approve to determine whether a discussion can properly be characterized as a privileged plea negotiation:

[F]irst whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

*United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978).

Viewing all of the circumstances here, there is not substantial evidence that defendant expected to negotiate a plea when he initiated and entered into discussions with the police officers. His statements cannot fairly be characterized as part of a plea discussion. The trial court did not err in admitting the defendant's statements into evidence.

III. *Admission of a Detective's Opinion Testimony.* Defendant alleges that the trial court erred in admitting the testimony of Waterloo detective Craig Penrose concerning the effects of a certain quantity and quality of heroin on a person. Over defense counsel's objection that the testimony would be beyond the scope of the witness's knowledge, would require an expert witness, and was beyond the scope of cross-examination, Penrose stated that the approximate duration of the effect of four to five grams of heroin of "the quality of heroin that we have in Waterloo" would be "an hour and a half to two hours."

The trial court has considerable discretion in determining whether a witness has sufficient personal experience to render an expert opinion. *State v. Gartin,* 271 N.W.2d 902, 912 (Iowa 1978). Expert opinion testimony is admissible if it will aid the jury in the discharge of its duties and if based on the witness's special training, experience or knowledge. *State v. Burrell,* 255 N.W.2d 119, 123 (Iowa 1977). We will not reverse the trial court on admitting expert testimony unless the court's discretion has been manifestly abused. *State v. Dvorsky,* 322 N.W.2d 62, 64 (Iowa 1982); *State v. Hall,* 297 N.W.2d 80, 88 (Iowa 1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1980).

A member of the Waterloo police department for over fifteen years, Detective Penrose had had extensive experience working on drug cases and with people involved in drug cases, both informants and drug users. He had accumulated knowledge about the quality of heroin available in Waterloo, both through continuing education and courses in police investigative work. The trial court did not abuse its discretion in finding Penrose qualified to give the testimony here challenged. *See*

*State v. Ogg,* 243 N.W.2d 620, 622 (Iowa 1976) (police officer qualified to express opinion on effects of LSD).

IV. *Prosecutorial Misconduct.* Defendant asserts that the trial court erred in denying his motion for mistrial, alleging that the State in closing argument unconstitutionally commented on defendant's failure to testify.

In *Griffin v. California,* 380 U.S. 609, 612–15, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106, 109–10 (1965), the United States Supreme Court held that comment by the prosecution concerning the defendant's failure to testify violates the self-incrimination clause of Amendment 5, United States Constitution, made applicable to the states by Amendment 14. This court has interpreted *Griffin* to prohibit the prosecution from using, directly or indirectly, silence of an accused. Our several cases applying *Griffin* principles are summarized in *State v. Nelson,* 234 N.W.2d 368, 371–73 (Iowa 1975).

■ The rule against commenting on an accused's silence is violated if the language used by the prosecutor, in context, would "naturally and necessarily" be understood by a jury to be a comment on the failure of the accused to testify. *United States v. Harris,* 627 F.2d 474, 476 (D.C.Cir.1980). The question in this case is whether the prosecution's statement in closing arguments, taken in context, would be understood by the jury as a comment on the defendant's failure to testify.

■ Defendant contends that the prosecution's final remarks in closing argument constituted such an unconstitutional comment. The prosecutor said:

I would submit to you the significance of what happened in La Porte is two-fold. It shows you again what a vicious, heartless person he is and it shows you that he didn't step forward to meet and assume the responsibility for his own actions. He didn't step out of these cornfields for the deputies. He won't step forward for you to assume the responsibility for what he did.

These somewhat ambiguous statements must be viewed in the context of the prosecutor's entire argument. The prosecutor stressed all of the defendant's actions and statements to several persons following his escape from the scene of the homicides through to the time of his arrest. In attempting to show that the defendant was not seriously affected by drug or alcohol consumption, and to show the consistently callous and remorseless attitude of the defendant, the prosecutor detailed tough statements made by the defendant to persons he met while fleeing. Defendant's refusal to assume the responsibilities for his actions was contrasted with the attitude and actions of the Phams brothers on whom defendant had attempted to place responsibility for the murders and who initially fled the scene of the crime, then contacted the Waterloo police and voluntarily surrendered. The prosecutor's argument up to his final comments was a proper attempt to establish malice beyond a reasonable doubt and rebut the defense that defendant's intent and state of mind were blurred by drug and alcohol intoxication. The final statement of the prosecutor, quoted above, would naturally and necessarily be understood by the jury in context to be a comment on what the defendant did do and say immediately after the crime was committed, rather than a comment on his failure to take the stand and testify. *See United States v. Bennett,* 542 F.2d 63, 64 (10th Cir.1976), *cert. denied,* 429 U.S. 1048, 97 S.Ct. 757, 50 L.Ed.2d 763 (1977).

We have consistently granted trial courts considerable discretion in determining whether closing arguments transgress the bounds of propriety in particular cases and whether unfair prejudice has occurred. *State v. Hollins,* 253 N.W.2d 597, 600 (Iowa 1977); *State v. Swallom,* 244 N.W.2d 321, 324–25 (Iowa 1976). Here, the trial court denied the defendant's motion for a mistrial, stating:

I can appreciate that you might put the interpretation standing alone. I think in the context in which it was spoken as picks up the responsibility and stepping forward in terms for the deputies and for

the police and for the—I forget the whole sequence, I think in that whole context it would be understood by the jury to mean in admitting guilt rather than testifying in some fashion.

The trial court did not abuse its discretion in denying defendant's motion for mistrial. Defendant's constitutional rights were not violated by the prosecutor's closing arguments.

IV. *Cumulative Error.* Because we find no merit in the other issues presented by defendant, we find no merit in his contention that cumulative error entitles him to a new trial. *State v. Windsor,* 316 N.W.2d 684, 688 (Iowa 1982).

AFFIRMED.