**Sheila Mae SCHERTZ, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 84–1521.

Supreme Court of Iowa.

Dec. 18, 1985.

Michael J. Motto, of John J. Carlin, P.C., Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen., and William E. Davis, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

SCHULTZ, Justice.

This appeal is from a district court's denial of postconviction relief. Sheila Mae Schertz, along with her husband and three other codefendants, was tried in a criminal proceeding on charges of murder, kidnapping, and theft. She was convicted of first degree kidnapping, second degree murder, and second degree theft. On appeal these convictions were affirmed. *State v. Schertz*, 328 N.W.2d 320 (Iowa 1982). Thereafter, Schertz filed a petition for postconviction relief which was denied. Before this court appellant now urges that she was denied effective assistance of counsel at each of her three previous proceedings. Additionally, appellant asserts that the postconviction court should have remedied errors allegedly committed by the trial court in denying her motions for severance and failing to determine whether she voluntarily relinquished her right to testify.

At the joint criminal trial, evidence was presented concerning appellant's participation in a planned theft which resulted in a killing and the abduction and kidnapping of a witness. The facts of the case were set out in an appeal by a codefendant and need not be repeated here. *See State v. LeCompte*, 327 N.W.2d 221, 222 (Iowa 1982).

Both prior to the trial and at the close of the State's evidence appellant unsuccessfully moved to sever her trial from the joint proceeding. At that time appellant claimed that her husband would be able to invoke the spousal privilege afforded by Iowa Code section 622.7 (1981) to her prejudice and that the jury would not give each defendant the necessary attention in that it would likely convict her of guilt by association. The trial court initially overruled this objection but allowed appellant to renew her motion at the close of the State's case. The trial court, however, overruled the renewed motion.

During the joint criminal trial appellant did not testify on her own behalf, even though her trial counsel had expected her to testify that she was coerced into participating in the crimes. At the postconviction proceeding both the appellant and her trial counsel stated that she had intended to testify, but at the last instant refused to do so because of threats she received from her codefendant husband. Further, appellant and her trial counsel testified that appellant refused to make a record concerning any such threats directed against her. At the joint criminal trial, however, appellant stated on the record that she voluntarily made the decision not to testify and was not coerced in any way.

On direct appeal of the criminal convictions appellant urged that the State "failed to present sufficient evidence to (1) show that she was a principal or aider and abettor to the kidnapping; and (2) establish the victim was tortured." *Schertz*, 328 N.W.2d at 321. In affirming her conviction we found that error was not preserved on the first issue and that there was substantial evidence that the victim was tortured. *Id.* at 321–22.

Thereafter, appellant petitioned for postconviction relief and alleged several grounds for relief. The grounds pertinent to this appeal are that appellant alleged that she was denied effective assistance of trial counsel and that she was threatened by her codefendants in such a manner that it precluded her from testifying. Following an evidentiary hearing, the district court denied appellant's petition for postconviction relief. It held that appellant failed to show ineffective assistance of counsel or that error was committed by the criminal trial court. The postconviction court reviewed the criminal proceedings and held that appellant failed to show she was prejudiced by her failure to testify. The court alluded to the substantial evidence against appellant and stated that "even if she had testified as was indicated in the postconviction hearing, the verdict would have been exactly what the jury did return."

In her appeal from the denial of postconviction relief, appellant now urges that the postconviction court erred in: (1) failing to find ineffective assistance of counsel by trial counsel and appellate counsel; (2) failing to find that the trial court abused its discretion in not granting her motion for severance; and (3) failing to find that the trial court erred in not personally addressing appellant, on the record, to determine whether she voluntarily waived her right to testify on her own behalf. Additionally, appellant urges that the counsel appointed to her for the postconviction relief proceeding provided ineffective assistance.

■ Ordinarily a postconviction relief proceeding pursuant to Iowa Code chapter 663A is at law and our review is not de novo. *Hinkle v. State,* 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts a violation of constitutional safeguards, the reviewing court makes its own evaluation based on the totality of the circumstances, which is the equivalent of a de novo review. *Id.*

I. *Ineffective assistance of trial counsel.* Appellant claims counsel's representation at her criminal trial was deficient. Specifically, she urges that trial counsel: (1) failed to preserve error on the issue of the sufficiency of evidence to show that she was a principal or aider and abettor to the kidnapping; (2) failed to object to improper statements made by the prosecutor during closing arguments; and (3) failed to advise appellant that a record could be made outside the presence of her codefendants regarding threats allegedly made against her.

■ When a postconviction applicant claims ineffective assistance of criminal trial counsel, the applicant assumes the burden to establish by a preponderance of evidence two particulars. First, the applicant must show that sufficient reason exists for not having raised the issue on direct appeal. *Hinkle,* 290 N.W.2d at 31. Secondly, by an examination of the circumstances the applicant must demonstrate counsel's inadequacy of representation. *Id.* at 30–31.

■ Appellant has made the proper showing on the first *Hinkle* requirement concerning the reason that the issue or issues were not raised on direct appeal. The sufficiency of the evidence as to aiding and abetting the kidnapping and the failure to object to improper statements made by the prosecutor during closing arguments could not have been raised on the criminal conviction appeal because trial counsel did not preserve these errors for appeal. Additionally, the State does not claim that appellate counsel should have raised ineffectiveness of counsel as to these two issues on direct appeal of the criminal convictions. On her third claim appellant complains of trial counsel's advice, a matter not in the trial record.

■ We have established general principles regarding the second particular, ineffective assistance of counsel. To constitute a claim of ineffectiveness of counsel, appellant must show: (1) that counsel's performance was so deficient that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) that the deficient performance so prejudiced the defense as to deprive the defendant of a fair trial. *State v. Losee,* 354 N.W.2d 239, 243 (Iowa 1984) (citing *Strickland v. Washington,* 466 U.S. 668, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). The Supreme Court stated in *Strickland,* "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. With these principles in mind, we turn to the particular claims.

A. *Sufficiency of the evidence.* On direct appeal of her criminal convictions, we indicated that appellant did not preserve error on the issue of whether the State presented sufficient evidence to show that she was a principal or aider and abettor to the kidnapping. *Schertz,* 328 N.W.2d at 321. Appellant's trial counsel testified at

the postconviction hearing that he did, however, challenge the sufficiency of the evidence to prove serious injury or torture was inflicted in connection with the kidnapping. Trial counsel explained further that he did not request a directed verdict for acquittal on the grounds that appellant was neither a principal nor aider and abettor to the kidnapping because there "was abundant evidence to indicate that she was participating in this." We believe the initial question is whether trial counsel's assessment was correct.

Appellant urges that there was no evidence presented at trial of her planning the kidnapping. Additionally, she claims that there was a lack of evidence that she assented to or lent countenance to the kidnapping or in some manner encouraged it. Appellant asserts that the evidence shows that she was just along for the ride when she went to the murder victim's apartment and that she did not know of plans to confront Mark Webb, the murder victim, for money. Appellant points to evidence that she did not pursue the kidnapping victim, Russell Greer, when he attempted to escape. Appellant refers to additional testimony indicating that she did not participate in any of the acts that led to the kidnapping or retention of the kidnapping victim.

Our examination of the record, however, indicates that there was evidence to support that appellant did participate in the kidnapping. Greer was visiting Webb when the five codefendants entered Webb's apartment. None of the codefendants appeared to fear each other and were in fact friends. Appellant and her husband, Terry Schertz, were engaged in a conversation when Terry nodded, a codefendant produced a knife and then approached Webb demanding money which Webb had allegedly stolen from him. Appellant was present at Webb's apartment when this money was taken from Webb and his throat slashed. During this time appellant placed the blade of her open knife against Greer's side and told Greer "don't move mother fucker or you're dead." She took Greer's car keys from his jacket pocket and looked through

his billfold. She also looked through Webb's closets and rummaged through the coats contained therein. Later, appellant struck Webb over the head with a large candle.

After Greer was told that he was being taken hostage, Greer was taken by force to his car. Once in the car with her codefendants and Greer, appellant, on her own initiative, removed food stamps and a car registration from the glove compartment. She asked her husband if the car registration was something which they could use to switch the ownership of the car to a different name. Appellant used the food stamps at grocery and convenience stores to buy cheap food items in order to accumulate change to buy gas. Seven stops were made for gas and food, and appellant got out of the car on each occasion.

Greer was then taken to a rock quarry near Cedar Rapids. All five defendants discussed whether they should tie up Greer at that spot, but they decided there were too many people around. Greer was then transported to a nearby state park and tied to a tree. He was beaten until someone stated that he or she thought Greer was dead. The five then left. Appellant was present at all times from the entry into Webb's apartment until Greer was left to die at the park tied to a tree.

█ We conclude that trial counsel's assessment of appellant's participation in the kidnapping was appropriate. We find trial counsel was not ineffective for failing to make a meritless motion.

B. *Failure to object to statements made by prosecutor during closing argument.* Appellant complains that her trial counsel failed to object to improper statements, made by the prosecutor during his closing argument, which appellant claims amounted to a comment on her failure to testify. Appellant asserts that the prosecutor's comment violated the self-incrimination clause of the Fifth Amendment made applicable to the states by the Fourteenth Amendment. *State v. Nelson*, 234 N.W.2d 368, 371 (Iowa 1975). The closing argu-

ments at the joint criminal trial were not reported. However, a codefendant's attorney testified about this matter in a deposition presented at the postconviction hearing. When questioned about the prosecutor's comment on the accused's failure to testify, he stated that:

> I've given it a lot of thought, it's been a while, but the best recollection I have is that the remark was made in rebuttal argument and it referred to—it was referring back to the arguments made by (counsel) for Terry Schertz and the prosecutor said where was any evidence presented to back that up is essentially what was said in remarking about Terry Schertz's defense.

The postconviction court ruled that the prosecutor's statement was directed toward a codefendant rather than at appellant. It also determined that the comment was proper rebuttal to the codefendant's argument. We agree.

■ Generally, a prosecutor may not comment on an accused's failure to testify. *State v. Taylor*, 336 N.W.2d 721, 727 (Iowa 1983). This rule is violated "if the language used by the prosecutor, in context, would 'naturally and necessarily' be understood by a jury to be a comment on the failure of the accused to testify." *Id.*

■ In the present case the prosecutor's statement was a proper rebuttal answer to a codefendant's argument. The comment, taken in context, did not naturally and necessarily focus the jury's attention on appellant's silence. The prosecutor was referring to a codefendant's argument. The focus was on another defendant, rather than appellant's silence. There is no merit in appellant's contention that her counsel was ineffective for failing to raise an erroneous objection.

C. *Record as to threats.* Appellant also contends her trial counsel was ineffective for failing to advise her that a record concerning her refusal to testify could have been made outside the presence of her codefendants. She claims her refusal to testify was caused by alleged threats made

against her. During the postconviction hearing, appellant testified that while at her criminal trial she was told that all her codefendants had weapons on them in the courtroom and would hurt her if she took the stand. She then stated, "[s]o I sat back, and I wouldn't—I wouldn't do anything." Appellant further testified that she was told by her trial counsel that a record had to be made in the presence of the codefendants. She asserts that this matter could have rather been heard in the absence of her codefendants and compares such a hearing to a conference or argument on a question of law.

Initially, we examine appellant's contention concerning her trial counsel's advice. Appellant's own testimony at the postconviction hearing is the only direct evidence that trial counsel advised her that a record concerning the alleged threats had to be made in the presence of her codefendants. Trial counsel testified at the postconviction hearing and his deposition was also introduced into the record. In both instances trial counsel gave no indication that appellant had requested a private hearing or that he advised her that a record of these alleged threats could not be made privately. In his deposition trial counsel indicated that the appellant refused to say anything to the judge. However, when asked if he made a record on appellant's behalf, counsel stated, "I remember discussing with Judge Havercamp. I'm not certain if a record was made." Later, when he testified at the postconviction hearing, trial counsel indicated that he and the appellant had a private meeting with the judge. Following trial counsel's postconviction testimony, appellant took the stand and testified that trial counsel was incorrect and that they did not have a private meeting with the judge. Appellant stated that she did not talk to the judge except when the record was made.

Appellant's present contentions of coercion are contradicted by our examination of the record of the original criminal trial. During her trial, appellant was questioned by her counsel, on the record, in the pres-

ence of the judge and all other parties. At that time appellant stated that her counsel had urged her to testify and that it was her decision not to testify on her own defense. Further, she related, on the record, that her decision was made intelligently, voluntarily and was not coerced in any way.

When we examine the totality of the evidence, appellant has not convinced us that, as she claims, her attorney advised her that she could not make a record relative to threats outside the presence of her codefendants. We do not find that she requested her counsel attempt to secure a private hearing regarding these alleged threats. Neither was trial counsel's assistance constitutionally ineffective on grounds that he failed to tell appellant that a hearing, on the record and out of the presence of her codefendants, could be arranged. While we shall explore problems surrounding a private hearing, we do it for discussion purposes and do not pass on the propriety of such a hearing.

Initially, the subject matter of such a hearing would have become known. Even if trial counsel requested a hearing out of the presence of codefendants and such hearing was granted, the State would not have been excluded. Additionally, the State had the right to participate in such a hearing. If appellant was allowed to present evidence of threats from codefendants, the State could have resisted by securing the codefendants' version of these alleged threats. Appellant's trial counsel certainly would have perceived that any accusation by appellant would not have remained a secret to the codefendants.

Next, trial counsel was not aware of an immediate need for a private hearing. He was unaware that appellant allegedly believed she was in present danger from her codefendants in the courtroom. At the postconviction proceeding trial counsel testified that appellant's fear of danger was her presence in the "Scott County jail, or subsequently, at another institution." Two of the other codefendants had already testified at the trial without incident. One of them, in claiming coercion, gave damaging testimony against his codefendants.

Finally, trial counsel was surprised by appellant's last minute decision not to testify. He attempted to persuade her into testifying. Trial counsel gave appellant the opportunity to make a record concerning why she did not testify. Appellant did not take advantage of this opportunity to announce her fears. Appellant first revealed her alleged fear of danger if she took the stand when she testified some two years later at her postconviction hearing.

When we examine appellant's complaint concerning trial counsel's failure to advise her about a hearing out of the presence of codefendants, we conclude appellant has failed to demonstrate that counsel's performance was deficient. In *Strickland* the Supreme Court stated: "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.... [T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at ——, 104 S.Ct. at 2064–65, 80 L.Ed.2d at 693. "The required examination should proceed while resisting, in the light of hindsight, the temptation to Monday morning quarterback the lawyer in the arena. Nor should the inquiry degenerate into a postmortem, microscopic dissection of each desperate effort of counsel to save a terminal case." *Hinkle*, 290 N.W.2d at 30.

Under these circumstances it has not been satisfactorily shown that trial counsel acted unreasonably in failing to advise appellant that she could seek a private hearing with the judge. Trial counsel was unaware of a present danger to appellant. Additionally, the alleged danger to appellant would also have been present if she "blew the whistle" about the threats made by her codefendants because they would certainly have been informed. Counsel was surprised by appellant's last minute decision not to testify and he had little time to act. In light of these circumstances, we conclude counsel's actions were

within the wide range of professionally competent assistance.

We are also not convinced that appellant has shown the second component required by the Supreme Court in *Strickland,* namely prejudice. We are not persuaded that even if she was granted a private hearing that appellant would have revealed these alleged threats. Even if this had lead to appellant taking the stand in her own defense, for reasons espoused later in this opinion, we conclude the result would have remained unchanged.

In summary, we find no merit in appellant's claims that she was denied effective assistance of trial counsel.

II. *Other ineffective assistance of counsel issues.* Here, we consider appellant's contention that the postconviction trial court should have determined that she was denied effective assistance of counsel during both her direct appeal and postconviction proceeding. Additionally, we review the effectiveness of counsel concerning two other issues not previously raised.

■ We need not cite authority for the proposition that the right to effective assistance of counsel applies to appeals and postconviction actions as well as at trial. The same standards that we apply to trial counsel competency also apply to subsequent counsel, and the client bears the same burden of proof to establish the ineffectiveness of counsel. *Hinkle,* 290 N.W.2d at 30–31. In postconviction and subsequent proceedings appellant must establish a sufficient reason why the issue was not raised in prior proceedings. *Sims v. State,* 295 N.W.2d 420, 422 (Iowa 1980). By a proper showing that all previous counsel were ineffective, a path may be forged to permit issues of error at trial to be raised before this court for the first time. *Id.* at 422–23.

A. *Appellate and postconviction counsel.* Appellant questions whether appellate counsel conferred with trial counsel or if postconviction counsel conferred with trial and appellate counsel in preparing appellant's case. However, appellant does not suggest what results such consultations would have produced. Likewise, appellant complains that only two issues were raised on her criminal conviction appeal. Again, she does not indicate how raising additional issues on that appeal would have produced a different result. Appellant then urges that we reserve claims of ineffectiveness against appellate and postconviction counsel for a second postconviction action.

■ Appellant's suggestion that a further evidentiary hearing is required on these issues is without merit. These issues arise from the record that is before us at this time. The general rule is that once convicted, a criminal defendant may not by a series of postconviction proceedings relitigate those issues that were properly for review on direct appeal or available in an initial postconviction proceeding. *See Polly v. State,* 355 N.W.2d 849, 854–56 (Iowa 1984). Appellant must show cause for failing to challenge these alleged errors and actual prejudice must result from those errors before these issues can be examined in postconviction proceedings. *See id.* at 856. We conclude appellant does not present to us grounds to either address this particular matter or reserve it for further postconviction proceedings.

■ B. *Right to testify.* Appellant next claims that the trial court abused its discretion by failing to grant her motions to sever her trial from that of her codefendants. Further, appellant claims that in denying such motions she was deprived of her right to testify as guaranteed by the Sixth Amendment. Appellant has never raised this issue in any previous proceeding. Issues not raised in the postconviction proceeding generally cannot be considered on appeal. *Grout v. State,* 320 N.W.2d 619, 620 (Iowa 1982). However, we believe there is a sufficient record established to dispose of this claim on appeal.

As we indicated in *Sims,* 295 N.W.2d at 422–23, the path to our examining this issue is the claim that all previous counsel provided ineffective assistance. To avoid the complexity of establishing ineffectiveness of counsel based on claims against

previous counsel, we first examine the issue as it applies to the criminal trial counsel in this case. Did trial counsel's failure to obtain a severance of the trial so undermine the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result?

Initially, we examine appellant's right to testify claim. While we would not base a criminal defendant's right to testify solely on the Sixth Amendment, such a right is recognized. While this right is not specifically expressed in the Constitution or Bill of Rights, the "centuries-old right granted an accused to be present and to be heard in person at a federal criminal trial may not be denied without violating the accused's Fifth and Sixth Amendment rights." *U.S. v. Bifield*, 702 F.2d 342, 349 (2nd Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983). The due process clause of the Fourteenth Amendment would secure that right to an accused in a state prosecution. *People v. Chavez*, 621 P.2d 1362, 1365 (Colo.), *cert. denied*, 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981).

■ We next examine the role trial counsel played in appellant's failure to testify on her own behalf. In the pretrial motion for severance trial counsel did not urge that without a severance appellant would not testify. However, at that time both appellant and trial counsel believed she would take the stand to testify on her own behalf. Trial counsel did not amend the motion to sever based on this new ground apparently because appellant would not admit on the record that she had allegedly been threatened. It is our belief that appellant cannot now assert a claim of ineffectiveness of counsel based primarily on appellant's own decisions not to testify or make a record of the alleged threats.

We agree with the assessment by the postconviction court when it stated:

The court further finds that she was given every opportunity to make these threats a matter of record in order that something could be done to help her and she refused to do so.

It is clear that her attorney did all he could reasonably do to help her and that the failure to do anything further was not ineffective assistance of counsel.

The predicament in which petitioner found herself at her trial is not one that was created by the State or her attorney or the court. It was a predicament that arose out of her life and which began long before the events which led to her prosecution in this case for murder and kidnapping. It may be that she had been totally and thoroughly destroyed to the effect to the point where she had no will of her own, but that is not established in this case. The court cannot find that she was reduced to the point of having no will whatsoever at the time of her trial.

In our review of the record, we are unconvinced that appellant had present fears of safety when she refused to testify. As we have previously indicated, appellant's trial counsel believed that these alleged fears were fears as to her safety in the future, after the trial was over. If appellant had informed her trial counsel that she believed there was danger to her safety in the courtroom, trial counsel could have acted to ensure that she was protected. By deciding to adopt a code of silence appellant effectively handcuffed her lawyer in his attempt to effectively represent her. We conclude that appellant's later attempt, at the postconviction hearing, to place the blame for her own decision on trial counsel is not persuasive. We conclude that it was appellant's decision not to testify. We are not convinced that this decision could have been changed by any advice or action by her counsel. Appellant has not shown that she was denied effective assistance of trial counsel.

■ Furthermore, even if trial counsel was constitutionally ineffective, appellant has not shown she was prejudiced as a matter of law by her attorney's error. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at ——, 104 S.Ct. at

2067, 80 L.Ed.2d at 696. The alleged ineffectiveness of counsel did not deny appellant "a meaningful adversarial testing" and deprive her of a fair trial thus creating prejudice as a matter of law. *See U.S. v. Cronic*, 466 U.S. 648, —— n. 25, 104 S.Ct. 2039, 2047 n. 25, 80 L.Ed.2d 657, 668 n. 25 (1984). Appellant had trial counsel's assistance in presenting evidence on her behalf and was not deprived of her rights of confrontation and cross-examination of witnesses against her. Moreover, in the present case we have no compelling reason to decide whether the failure to secure appellant's testimony is presumptively prejudicial. Appellant's testimony at the postconviction proceeding provides us the evidence we need to determine whether appellant was actually prejudiced by her failure to testify.

■ Appellant's testimony at the postconviction proceeding supports our belief that even if appellant had testified the outcome would have been the same. The substance of appellant's testimony, if she had taken the stand at her criminal trial, would have been that she was coerced through fear into participating in the murder and kidnapping. However, the defense of compulsion is not available where there has been a "physical injury" to the victim. Iowa Code § 704.10; *LeCompte*, 327 N.W.2d at 223. Additionally, an aider and abettor is subject to the same limitations as a principal in the defense of compulsion. Iowa Code § 703.1; *LeCompte*, 327 N.W.2d at 224. Regardless of the effect of the compulsion defense in this case, we believe appellant's testimony, when viewed in the totality of the evidence, would not have changed the result reached by the jury.

■ We agree with appellant that if she had testified at the joint criminal trial there would have been instances when her testimony would have been inconsistent with the testimony of other witnesses. Specifically, appellant testified at the postconviction proceeding that if she had taken the stand at trial to testify on her own behalf, she would have stated that she did not voluntarily hit Webb with a candle or help kidnap Greer by taking him to a park and tying him to a tree. If she had testified at her criminal trial she would have claimed that she did not go through Greer's billfold and in fact attempted to aid Greer at various times. Further, she would have claimed that someone other than her husband told her to get Greer's keys. This evidence, however, does not aid appellant in meeting her burden of showing prejudice. We believe that even if appellant had testified on her own behalf at the criminal trial, her testimony, when viewed in light of the total evidence presented, would not have diluted the strong evidence presented that she was an active and willing participant in the crimes involved. It is stated in *Strickland:* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Appellant has not made this showing. We agree with the postconviction court that the outcome would have been the same.

C. *Voluntary waiver of right to testify.* Appellant also claims that the trial court should have personally addressed her to determine whether she voluntarily waived her right to testify. She compares the decision to testify with that of a guilty plea proceeding in which it is required that the judge, before accepting the plea, be satisfied that the guilty plea is voluntary.

Similar to the last issue we addressed, appellant raises this issue for the first time on appeal. Again, we believe the record is sufficient to address this issue as it relates to counsels' failure to previously challenge this matter. The least complicated solution is to determine whether counsel on direct appeal failed to perform an essential duty by not raising this issue.

In this appeal appellant cites us no Iowa cases or any other authority that requires a trial judge to personally address a criminal defendant, on the record, to determine whether the defendant waived her right to

testify on her own behalf. Such colloquy is not required by our Rules of Criminal Procedure. In order to raise such an issue counsel would have had to either anticipate that we were going to change our procedures or persuade us to do so.

 To violate constitutional standards, counsel's error must be such that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made. *See Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984). We do not believe that it shows a lack of diligence on the part of counsel to fail to raise a claim that has not been recognized or suggested by our previous case law or other authority. We do not find that counsel was ineffective for failing to raise this issue.

 Additionally, appellant urges that the trial court had actual knowledge that she was not voluntarily waiving her right to testify on her own behalf. The source of her claim is trial counsel's postconviction testimony that a private meeting took place with the trial judge. However, appellant testified at the postconviction hearing that she was not involved in any private meeting with the judge, thus disputing her trial counsel's testimony. More importantly, it would have been inappropriate for the trial judge to have participated in ex parte discussions with appellant and her counsel during trial. ABA Product on Standards for Criminal Justice, *The Function of the Trial Judge* § 1.6 (Approved Draft, 1972). We conclude that there was no such private meeting and that the judge was unaware of the alleged threats.

 Finally, a trial court has no constitutional or other duty to stop the trial proceedings and determine that a criminal defendant who is represented by legal counsel has validly exercised her Fifth Amendment rights in a jury trial. The decision to testify is not at the same level as that of a plea of guilty which deprives a defendant of numerous rights. Also, a decision whether to testify is one that is considered part of trial strategy. This is a matter that the trial court should not be involved in and is better left to the criminal defendant and his or her counsel.

In summary, we hold that the district court was not in error for denying appellant's petition for postconviction relief. We find no reason to preserve issues concerning ineffectiveness of counsel for further postconviction proceedings.

AFFIRMED.