STATE of Iowa, Appellee,

v.

Brian Scott HULBERT, Appellant.

No. 92–2048.

Supreme Court of Iowa.

March 23, 1994.

Linda Del Gallo, State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich and Thomas H. Miller, Asst. Attys. Gen., and Charles A. Stream, Mahaska County Atty., for appellee.

Considered by CARTER, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

Defendant, Brian Hulbert, appeals from a judgment convicting him of first-degree murder with respect to the beating death of his wife, Amie Hulbert. He asserts trial court error with respect to (1) refusal to allow him to present expert testimony in support of his intoxication defense; (2) denial of a mistrial motion asserting that the prosecutor, in closing argument, directed the jury's attention to defendant having declined to testify; and (3) denial of a mistrial motion based on an improper question asked by the prosecutor. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

The victim, Amie Hulbert, and the defendant, Brian Scott Hulbert, were having marital difficulties. Testimony revealed that Amie was planning to move out of the marital home in Oskaloosa. On the night that Amie was planning to leave the defendant, November 19, 1991, an eyewitness placed her and defendant together in their home at 9 p.m. Amie was not seen alive again after this witness left their home at 9:15 p.m. Defendant did not testify at the trial but told police officers who investigated the crime that Amie had also left the home at about this time.

On the morning of November 20, 1991, Amie's car was discovered behind a recycling center, where it did not belong. There was blood on the back bumper and in the trunk. At the Hulbert home, blood was found in the driveway and on the riser at the back door. A pair of cowboy boots, identified as belonging to defendant, were found by a garbage can outside the Hulbert home. The boots had blood on them. A criminalist testified that the blood in and on the car, on the boots, and at the Hulbert home was consistent with Amie's. Hairs found in the same locations were also found to be consistent with Amie's.

Amie's body was discovered in a ditch by a gravel road off of Highway 163 on December 5, 1991. An autopsy revealed that she had been badly beaten and that she ultimately died from a head injury inflicted by a dull cutting instrument. Additional facts material to the issues on appeal will be set forth in our discussion of the points of law raised by the parties.

### I. *Refusal to Permit Defendant to Offer Expert Testimony with Respect to His Intoxication Defense.*

On June 11, 1992, more than four months prior to trial, defendant filed separate notices of a diminished-capacity defense and an intoxication defense. On July 10, 1992, the district court sustained the State's application pursuant to Iowa Rule of Criminal Procedure 10(11)(b)(2) requesting that defendant be examined by the State's expert. At this time, defendant withdrew the notice of diminished-capacity defense. The notice of intoxication defense was not withdrawn. The defendant declined to submit to examination by the State's expert.

■ Relying on Iowa Rule of Criminal Procedure 10(11)(d) the district court concluded that defendant's refusal to submit to examination by the State's expert justified a sanction precluding defendant's expert witness from testifying with respect to his intoxication defense. Defendant contends that this ruling was erroneous because rule 10(11)(b)(2) only applies to notices of an insanity defense or diminished-responsibility defense and does not extend to an intoxication defense.

The rule with which we are dealing provides:

> b. *Insanity and diminished responsibility.*
>
> . . . .
>
> (2) *State's right to expert examination.* Where a defendant has given notice of the use of the defense of insanity or diminished responsibility and intends to call an expert witness or witnesses on that issue at trial the defendant shall, within the time provided for the filing of pretrial motions, file written notice of the name of each such witness. Upon such notice or as otherwise appropriate the court may upon application order the examination of the defendant by a state-named expert or experts whose names shall be disclosed to the defendant prior to examination.

Iowa R.Crim.P. 10(11)(b)(2). Subsection (d) of the same rule provides:

> d. *Failure to comply.* If either party fails to abide by the time periods heretofore described, such party may not offer evidence on the issue of alibi, insanity, diminished responsibility, intoxication, entrapment, or self-defense without leave of court for good cause shown. In granting leave, the court may impose terms and conditions including a delay or continuance of trial. The right of a defendant to give evidence of alibi, insanity, diminished responsibility, intoxication, entrapment, or self-defense in his own testimony is not limited by this rule.

The State contends that this court in *State v. Taylor,* 336 N.W.2d 721 (Iowa 1983), rejected the contention that defendant is now advancing. In reexamining *Taylor,* as it applies to the issue now before the court, we believe that our holding was prompted by the language of the notice of intoxication defense presented in that case. That notice referred to "diminished responsibility by virtue of alcohol and drug intoxication." *Id.* at 725. The language of the notice-of-intoxication defense given by the present defendant did not incorporate the concept of diminished responsibility. A diminished-responsibility defense was made the subject of a separate notice that was subsequently withdrawn. Notwithstanding the differences between this case and the *Taylor* case, we believe that on the present record the district court was justified and did not abuse its discretion in prohibiting defendant's expert from testifying.

■ In considering the potential application of rule 10(11)(b)(2) and rule 10(11)(d) to a so-called intoxication defense, we are persuaded that this should turn on whether the proposed defense will incorporate a mental condition specifically attributable to the defendant on trial. If the anticipated defense incorporates a mental condition peculiar to the defendant on trial, then the State may properly seek an examination of expert witnesses under rule 10(11)(b)(2). Upon defendant's refusal to obey the court's direction that this be done, a sanction is warranted excluding the defendant's expert testimony under rule 10(11)(d). If, on the other hand, the defense is based entirely on the effects of alcohol or related substances on the human body generally and is not tailored to a mental

condition peculiar to the defendant, we do not believe rule 10(11)(b)(2) applies. In the latter situation, the State has no need for a mental evaluation of the defendant in order to combat the defense that is being presented by expert testimony or otherwise.

In the present case, the burden was on defendant to expressly disavow on the record any intent to base his intoxication defense on a mental condition peculiar to him if he wished to avoid the application of rule 10(11)(b)(2). He failed to do so either directly or by necessary implication. The district court was thus left with more than enough reason to infer that the proposed intoxication defense would incorporate a mental condition peculiar to defendant. This inference was reinforced, in part, by the fact that defendant had for a period of time asserted a traditional diminished-responsibility defense based on mental defect. We find no merit in defendant's first assignment of error.

## II. *Alleged Reference by Prosecutor to Defendant's Failure to Testify.*

■ Defendant contends that the prosecutor's closing argument contained a thinly veiled reference to the defendant's failure to testify. He asserts that the district court erred in overruling his motion for mistrial based on that occurrence.

The closing arguments in the case were not reported. During the prosecutor's argument, however, defendant's counsel requested permission to make a record out of the presence of the jury. In that record, defense counsel asserted that "[the prosecutor] stated: 'There were only two witnesses present at the time—Amie cannot stand here and testify.'" The prosecutor did not deny making the alleged statements but asserted that defendant's objection cut him off before he could complete the statement. He stated that it was his intention to follow up on the challenged remark with a comment that "there is physical evidence left by Amie Hulbert which speaks to us." The prosecutor contended this was preparatory to arguing the significance of the circumstantial evi-

dence in view of the obvious lack of direct evidence.

The State urges that the prosecutor's explanation for the challenged statement provides a reason for the remark that is equally plausible with defendant's suggestion that it was intended as a comment on the accused's having declined to testify. Arguably, if the prosecutor's intent was only to emphasize that the victim's inability to testify did not diminish the probative effect of physical evidence traceable to her person, it was not necessary to invoke the "only two witnesses" comment. However, notwithstanding this apparent weakness in the State's theory, we do not believe that the trial court abused its discretion in overruling the motion for mistrial.

■ The test we have developed in dealing with issues of this type is not whether the jury possibly or even probably would view the challenged remark as a reference to the accused's silence, but whether it necessarily would have done so. *See State v. Bishop,* 387 N.W.2d 554, 563 (Iowa 1986). The challenged remark was noticeably less directed to the forbidden area of Fifth Amendment privilege than was the remark found not to require reversal in *State v. Hutchison,* 341 N.W.2d 33, 39 (Iowa 1983).[1] We do not find it to be the kind of comment that would cause the jury, then or later, to improperly dwell on defendant's failure to testify.

We believe that the primary thrust of the prosecutor's comment was aimed at disabusing the jury of the notion that a reasonable doubt might be found based on the lack of evidence produced by the State. That is a problem that the State necessarily faces in prosecutions based on circumstantial evidence. Consequently, we believe some explanation by the prosecutor of why more direct evidence was not produced is permissible. We conclude that the district court did not err in refusing to grant a mistrial based on the challenged remark.

---

**1.** The remark that was challenged in the *Hutchison* case was "if the defendant wants to say that,

he can say it later." *Id.* at 39.

### III. *Propriety of Question Concerning Location of a Hatchet.*

The last issue we must consider is defendant's claim of error based on the refusal to grant a mistrial when a Division of Criminal Investigation criminologist was asked by the prosecutor, "Did you locate any hatchet?" The criminologist responded, "No, sir."

There was substantial testimony presented without objection that the victim had been killed by a blow from an instrument that was less than razor sharp but a cutting instrument nonetheless. The instrument was described as "dull enough to have abraded the margins of the skin." Evidence was presented that a friend of defendant had loaned him a hatchet that was not discovered in a search of defendant's home after the crime. Within the context of that evidence, we believe the prosecutor's remark was only intended to show that the State's investigation never produced an instrument comparable to that used in the killing. We find no reason to suspect any improper motive on the part of the prosecutor in asking the challenged question.

Defendant's objection to the challenged question was sustained, and the jury was admonished to disregard both the question and the answer. Although the question was certainly of marginal relevancy, based on the answer that the prosecutor must have known would be forthcoming, we are unable to perceive how the defendant was prejudiced in any way by either the question or the answer. Clearly, the trial court's decision to deny a mistrial based on this occurrence was not an abuse of discretion.

We have considered all arguments presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**