STATE of Iowa, Appellee,

v.

John Henry EPPS, Appellant.

No. 66565.

Supreme Court of Iowa.

July 21, 1982.

Francis C. Hoyt, Jr., Chief Appellate Defender, and Douglas F. Staskal, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., and John P. Messina, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, HARRIS, and LARSON, JJ.

LARSON, Justice.

A jury convicted the defendant, John Henry Epps, of first-degree murder, Iowa Code §§ 707.1, 707.2 (1979). On appeal he complains that (1) there was insufficient evidence to submit the case to the jury; (2) the trial court erred in refusing to set aside the trial information; (3) the court erred in admitting a key exhibit into evidence; and (4) he was denied effective assistance of counsel. We affirm.

I. *Sufficiency of the evidence.*

At trial the State attempted to prove that the defendant and his brother committed murder while burglarizing the victim's residence. The defendant asserts there was insufficient evidence to warrant his conviction. Specifically, he claims that there was no evidence identifying him as one of the burglars and that the trial court erred in denying his motion for judgment of acquittal, Iowa R.Crim.P. 18(10).

We view the evidence in the light most favorable to the State, and all legitimate inferences that are fairly and reasonably deducted from the evidence will be accepted. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). We consider all of the evidence, not just that supporting the verdict. *State v. McFadden*, 320 N.W.2d 608, 614 (Iowa 1982). The verdict will be upheld if supported by "substantial" evidence, which means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.; State v. Robinson*, 288 N.W.2d 337, 338–40 (Iowa 1980). With these principles in mind we examine the evidence presented at the trial.

The victim and his wife were asleep on the night of July 17, 1980, when she awoke to find two black men in her second-floor bedroom ransacking the dresser drawers. The room, illuminated by a 25-watt light bulb, was not totally dark and she could see the men at the foot of her bed. She spoke to them but apparently received an obscenity in response. Worried for the safety of her husband, who was sleeping on the first floor, she went downstairs, where she found him crumpled on the floor and moaning. Because the telephone was disconnected, she went to a next-door neighbor's house and awakened him. By the time the neighbor arrived at the victim's residence the burglars were gone.

The neighbor telephoned for an ambulance sometime around 11:30, and for the police at 11:37. When police officers arrived at the house at 11:50 the victim's wife described the burglars as "[t]wo black males, both under 5' 10", both with shiny and smooth skin, both [with] some type of covering on their head, one wearing a sleeveless shirt, [the] other wearing a short-sleeved shirt." The ambulance arrived and the victim was taken to a nearby hospital, where he died the next morning, after surgery. Death was attributed to shock and massive blood loss, as a result of external trauma to the victim's liver.

One of the officers testified that later the same day the victim's wife additionally informed police officers the burglars "[l]ooked like they could be twin brothers."

The police investigation began to focus on the defendant and his brother David. David's fresh fingerprint was found in the victim's residence, and property taken in the burglary was found in David's automobile along with his handwritten list of sundry addresses and telephone numbers. No physical evidence incriminated the defendant in the crime, but after the two brothers were taken into custody he blurted to police officers that if "[y]ou guys really want to know what happened, let me go and I will tell you."

Testimony by one witness placed the two brothers in the general vicinity of the victim's residence around 9:00 the night in question. According to him, the defendant was wearing a "green Army shirt" with the sleeves cut off at the shoulder, and David was wearing an undershirt similar in style to a basketball jersey. Also, one had a shirt partially tucked inside his pants. Most important, the witness testified that no later than 11:20 or 11:25 he again saw the two brothers within one-half block of the victim's residence.

The victim's wife testified she saw the burglars for perhaps three to five minutes. Although the light in her bedroom was not ideal, she could see they "were in their early twenties," "very similar in size," and "were more the darker type" of Negroid. Both men wore something on their heads, although she wasn't sure of her description: "I'd call it in my style, turbans, .... it covered their forehead[s] but wasn't down so it shielded their eyes...." One wore a type of "short-sleeved summer shirt" that was "a greenish, gray color" and the other wore a vest that was "halter like," did not button down the front, and had no sleeves. In addition, "they didn't have whiskers, [sideburns,] or beards.... [although] one might have had a trace of moustache...." Further, their skin "was rather shiny" in appearance.

A third witness testified that a few hours after the crime, at 1:15 a. m., he saw the two brothers in David's automobile only blocks from the victim's residence. At that time the defendant was wearing a "dark-colored, sleeveless shirt [and] dark pants."

■ On the strength of the evidence above the trial court denied the defendant's motion for judgment of acquittal and submitted the issue to the jury. The evidence on identification was not overwhelming. On the one hand, the victim's wife was not able to clearly identify the defendant as one of the burglars; no scientific evidence linked the defendant to the scene of the crime; and no incriminating evidence was later found in his possession. On the other hand, there was testimony on the similarity in physical features, including size, facial appearance, hair, and skin shade and texture, between the defendant and one or both of the burglars (and the defendant concedes his brother David was one of them); on his and one of the burglar's similar clothing, both style and color; and on the brothers' presence within one-half block of the victim's residence just minutes before or after the crime, see Schrier, 300 N.W.2d at 309 (presence of an accused at the scene of the crime is a factor from which guilt may be inferred, although not dispositive by itself). Further, the defendant's involvement in the crime could be inferred, to some degree, from his spontaneous statement to the authorities while in custody. This combination of direct and circumstantial evidence is sufficient to warrant the trial court's denial of the defendant's motion. See generally 4 Jones on Evidence ch. 29 (1972); 1 Underhill's Criminal Evidence § 125, at 332–33 (1973); 2 O. Warren, Homicide §§ 211–12, at 542–86 (1938).

II.  *Minutes of evidence.*

In a different context the defendant again complains of the State's attempt to prove he was one of the burglars, asserting the trial court erred in denying his motion to set aside the trial information. He argues the minutes, Iowa R.Crim.P. 5(4), failed "to set forth evidence which would warrant conviction of the crime charged if explained," since they merely place him with his brother David before and after the crime and not at the scene. In response,

the State argues rule 5(4) was not violated because it can be reasonably inferred from the minutes the defendant was one of the burglars.

Rule 5 establishes the procedure for preparation and filing of the trial information. It requires approval by a judge having jurisdiction of the offense:

> Prior to the filing of the information, a district judge, district associate judge or magistrate having jurisdiction of the offense *must approve the information by a finding that the evidence contained in the information and the minutes of evidence, if unexplained, would warrant a conviction by the trial jury. If not approved, the charge may be presented to the grand jury for consideration. At any time after judicial approval of an information, and prior to the commencement of trial, the court, on its own motion, may order said information set aside and said case submitted to the grand jury.*

Iowa R.Crim.P. 5(4) (emphasis added).

■ There is a preliminary question whether an accused may move under rule 5(4) to set aside a trial information. The rule does not expressly provide for such motion but, as the State concedes, it appears reasonable to conclude that such avenue for relief is inherent within it. *Cf. State v. Wrage*, 279 N.W.2d 4, 5 (Iowa 1979) (under Iowa Code § 903.2 (1979) a trial court may, on motion, reconsider a misdemeanant's sentence although the statute only provided for reconsideration sua sponte: "We know of no rule which prohibits parties from applying to courts for appropriate relief.")

■ The question remains whether "evidence contained in the information and the minutes of evidence, if unexplained, would warrant a conviction by the trial jury." Iowa R.Crim.P. 5(4). The defendant suggests this requirement necessitates a greater showing than that for probable cause. However, in *State v. Shank*, 296 N.W.2d 791, 792 (Iowa 1980), this court indicated the requirement in rule 5(4) incorporated that standard: "the minutes are essential for the magistrate to find probable cause

for detaining the accused on the charge." *See* J. Roehrick, *The New Iowa Criminal Code: A Comparison* 468 (1978) (rule 5(4) "requires the court to find probable cause before the information is filed"). *See generally Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54, 68 (1975) (the filing of a trial information by a prosecutor, alone, does not satisfy the fourth amendment).

In *State v. Leto*, 305 N.W.2d 482, 485 (Iowa 1981) we noted that "[w]hile probable cause requires more than a "mere suspicion" of criminal activity, or "innocent-appearing activity," "there is a large difference between proof of guilt and proof of probable cause." *See Brinegar v. United States*, 338 U.S. 160, 173, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879, 1889 (1948); 1 C. Wright & A. Miller, *Federal Practice and Procedure* § 52 at 42–43, § 77 at 125–26 (1969).

■ We need not set out the minutes of evidence in detail. Suffice it to say they tracked the evidence of identification discussed in the prior division. For the reasons discussed there, this evidence of identification was sufficient: it would, if explained, warrant a conviction by a trial jury. Accordingly, the trial court did not err in refusing to set aside the trial information.

### III. *Admissibility of evidence.*

The trial court admitted into evidence a jewelry box taken from the victim's residence and David's handwritten list of addresses and telephone numbers found within it, which were seized from his automobile. The exhibit was offered by the State to show that David was one of the burglars. The defendant objected to its admission on the ground of irrelevancy. On appeal he again asserts that the exhibit had no probative value in establishing *his* guilt, and that the trial court abused its discretion in admitting it. The State responds the evidence was relevant but contends the real issue, if any, is whether the exhibit should have been excluded on the ground of immateriality.

Whether the issue is relevancy or materiality, the defendant's objection was sufficient to preserve error on either ground. *See State v. Clay*, 213 N.W.2d 473, 477 (Iowa 1973) ("The objections, 'irrelevant and immaterial,' when admissibility of evidence is challenged in the trial court on either of those grounds are sufficiently specific to raise the issue in this court."). For the reasons already discussed the involvement of the defendant's brother in the crime was relevant and material to establishing the defendant's presence at the crime scene, and the trial court did not abuse its discretion, *see State v. Don*, 318 N.W.2d 801, 806 (Iowa 1982), in admitting the exhibit.

### IV. *Effective assistance of counsel.*

The defendant argues he was denied effective assistance of counsel, apparently on federal constitutional grounds alone, because of his attorney's failure to object to the closing argument of the prosecutor. He asserts the prosecutor impermissibly referred to his failure to testify and confused the jury as to which party had the burden of proof. The argument by the prosecutor included the following:

> He [defense counsel] talks about Officer Marshall. Well, why wasn't Officer Marshall brought in here to talk about what [a witness] told him? How many times during trial have you heard, "Hearsay, your Honor." That's what hearsay is. Somebody else coming in to tell us what somebody else told them.
>
> You know, ladies and gentlemen, the defense in a criminal case doesn't have any burden to prove anything. They don't have to put anything on. They don't have to do anything, except get up and say I rest. But that's not what happened in this case. The defense put witnesses on. Six, seven, eight witnesses. And do you know something else, ladies and gentlemen? They have the same subpoena power we do.
>
> Time and time again you hear in argument, well, why didn't the State call such and such a witness. Well, if that person is so important and if they put on a case why didn't they then subpoena that person in? If in fact they were going to put on a case and subpoena people in to testify, why didn't we have witnesses in on behalf of [the defendant] to tell us where he really was that night, if he wasn't there.
>
> I contend to you, ladies and gentlemen, the reason we didn't have that is because there wasn't anybody who could say that because [the defendant] was there that night.

We have held that comments on a defendant's failure to call witnesses may be permitted if they are in response to comments by defense counsel. *State v. White*, 225 N.W.2d 104, 106 (Iowa 1975); *State v. O'Kelly*, 211 N.W.2d 589, 597 (Iowa 1973). The milieu of the trial against which such comments must be evaluated is not before us, as the defense argument was not reported. And, like many decisions by attorneys in the heat of battle, there may have been tactical reasons for not objecting during the argument. We have consistently held under these circumstances that the issue of effectiveness of counsel is handled more effectively through postconviction relief proceedings, Iowa Code ch. 663A, in which a more complete record is available. *See, e.g., State v. Kellogg*, 263 N.W.2d 539, 544 (Iowa 1978). It is premature to attempt resolution of the issues on direct appeal.

We find no reversible error.

AFFIRMED.