STATE of Iowa, Appellee,

v.

Sheila Mae SCHERTZ, Appellant.

No. 67062.

Supreme Court of Iowa.

Dec. 22, 1982.

Francis C. Hoyt, Jr., Appellate Defender, and Douglas F. Staskal, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., and Shirley Ann Steffe, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

Defendant Sheila Mae Schertz was convicted of kidnapping in the first degree, Iowa Code section 710.2 (1981), murder in the second degree, section 707.3, and theft in the second degree, section 714.2. She appeals from her kidnapping conviction asserting the trial court erred in denying her

motion for judgment of acquittal. On appeal, she argues the State failed to present sufficient evidence to (1) show that she was a principal or aider and abettor to the kidnapping and (2) establish the victim was tortured.

## I. *Preservation of Error.*

■ At the close of the State's evidence, the defendant joined an unsuccessful motion made by a co-defendant for judgment of acquittal on the charge of kidnapping in the first degree. *See* Iowa R.Crim.P. 18(8)(a). The motion stated, in relevant part:

> that there has been no evidence produced by the State to show that any assault, and by assault I would include the pointing of knives at Russell Greer, was for any purpose other than to maintain a hostage situation, that it was not part of a systematic effort at punishment, coercion for value to obtain any kind of statement or for any other purpose which may be included in a reasonable definition of torture.

The motion did not embrace the defendant's first contention of error, that there was insufficient evidence to show the defendant was a principal or aider and abettor. Consequently, the defendant has failed to sufficiently preserve error on that issue, *see State v. Rosewall,* 239 N.W.2d 171, 173 (Iowa 1976), and the only issue for review is the second one urged.

## II. *Proof of Torture.*

■ Kidnapping in the first degree is defined in Iowa Code section 710.2, and occurs when, as a consequence of the kidnapping, the victim suffers serious injury or is intentionally subjected to torture or sexual abuse.

In the present case, the only ground that ultimately went to the jury was that the defendant tortured the victim. The trial court instructed the jury on the meaning of torture as follows: "Under the law as applied to this case, 'torture' is defined as: to intentionally inflict intense pain to body for purposes of punishment, or to abstract a confession or information, or for sadistic pleasure."

Based on the trial court's instruction on torture, the defendant argues the State was required to prove that she inflicted intense physical pain upon the victim for one of the specific purposes mentioned. She claims the State merely proved that the victim was injured and that it failed to show pain was inflicted for the purpose of punishment, coercion, or sadistic pleasure.

■ In reviewing the trial court's ruling on the motion for judgment of acquittal, this court reviews the evidence in the light most favorable to the State, Iowa Rule of Appellate Procedure 14(f)(2); *State v. Marr,* 316 N.W.2d 176, 177 (Iowa 1982), and all legitimate inferences that may reasonably be deducted therefrom are accepted. *State v. Rich,* 305 N.W.2d 739, 741 (Iowa 1981); *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). A refusal to grant a motion for judgment of acquittal will withstand challenge if there is any substantial evidence in the record tending to support the charge. *State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981). Substantial evidence means evidence which would convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Epps,* 322 N.W.2d 288, 289 (Iowa 1982); *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980).

With these principles in mind, the jury could have found the following.[1] The victim, after witnessing a murder, was abducted and taken to Palisades Park, near Cedar Rapids, tied to a tree, and beaten. The victim testified he was bound and gagged with strips of his shirt, tied to the tree with his belt, and beaten "hard" about the head "over a half dozen times" and kicked in the side. He further testified that while he was being struck he heard one of the abductors say "he's dead, that's good enough, he's

---

1. Additional facts surrounding the case are set forth in *State v. LeCompte,* 327 N.W.2d 221 (Iowa 1982), a companion case filed today.

dead," the beating, however, continued. A co-defendant, who actually struck the victim, testified he did it "[t]o stall for time. I didn't know for sure what to do so I tried to knock him out so we could get away a little bit." As a result of the beating, the victim received multiple lacerations on the scalp measuring 13 to 14 centimeters and requiring suturing, a fractured rib, bruising of the right chest wall and other bruised areas and abrasions.

The term "torture" is not defined in the code, but was recently addressed by this court in *State v. Cross*, 308 N.W.2d 25 (Iowa 1981). In *Cross*, the defendant tore off the victim's clothes and hit her several times, one blow causing a large head wound. He bit the victim's breasts, chained her hands, and hauled her, nude, in his car trunk on a cold fall night. He constantly threatened to kill her and to inflict sexual abuse. We noted the lack of a statutory definition of "torture" under our first-degree kidnapping statute and said:

> [c]ommentators on the criminal code suggest "torture" ordinarily means "the intentional infliction of pain [either] mental or physical," *see* Dunahoo, *The New Iowa Criminal Code: Part II,* 29 Drake L.Rev. 191, 554 n. 570 (Iowa 1980), and "the deliberate infliction of severe pain," *see* J. Yeager & R. Carlson, 4 *Iowa Practice: Criminal Law and Procedure* § 236 (1979). The trial court fashioned a more exacting definition of torture that encompassed the elements these definitions emphasize: that the action be deliberate or intentional, and that pain be inflicted. *See also Webster's Third New International Dictionary* 2414 (1976) ("the infliction of intense pain ... to punish or coerce someone").

*Id.* at 27.

Under the trial court's definition of torture in this case, the first element, the intentional infliction of "intense physical pain" was clearly supported in the evidence. Indeed, the defendant concedes in her brief

that the victim "was probably the victim of attempted murder. He probably suffered serious injury." The defendant contends that the subjective-purpose element of the torture instruction was not supported by the record.[2]

In support of her position that the victim was not subjected to pain for one of the purposes enumerated in the court's instruction, the defendant points to testimony of a co-defendant that the victim was hit to stall for time, as well as a portion of the victim's testimony that during the attack he overheard someone say, "he's dead, that's good enough" and someone else say "no, he isn't." The defendant concludes that this testimony supports a finding that the victim was struck for the purposes of killing him rather than for punishment, coercion, or sadistic pleasure.

The credibility of witnesses and the weight to be given their testimony are determinations properly reserved for the jury. *Aldape,* 307 N.W.2d at 40; *Robinson,* 238 N.W.2d at 341. A rational jury could have concluded the pain was inflicted for one of the specific purposes. For example, the jury could have concluded the victim was intentionally subjected to intense pain for punishment, perhaps for witnessing the murder or for the victim's earlier, unsuccessful escape attempt; or the jury could have concluded the infliction of pain was for sadistic pleasure since the victim was securely tied to a tree and further beating was unnecessary to guarantee a getaway.

We conclude the charge is supported by substantial evidence.

AFFIRMED.

---

2. *In addressing this issue we do not decide whether evidence of one of the enumerated purposes is required. Such an additional re-*quirement was not mentioned by the legal commentators above, nor was it present in *Cross,* 308 N.W.2d at 25.