# IN THE COURT OF APPEALS OF IOWA

No. 21-0795
Filed October 19, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARY JANE JACKSON THOMAS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

        A defendant appeals from the denial of her motions to dismiss, for judgment of acquittal, and for a new trial. **AFFIRMED.**

        Webb L. Wassmer of Wassmer Law Office, PLC, Marion, for appellant.

        Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

        Heard by Bower, C.J., and Greer and Badding, JJ. Chicchelly, J., takes no part.

**GREER, Judge.**

In addition to other convictions, a jury found Mary Jane Jackson Thomas guilty of both first- and second-degree kidnapping of her stepdaughter, K.T.—Jackson Thomas challenges only these kidnapping convictions. Throughout the trial, Jackson Thomas moved to dismiss the kidnapping charges under Iowa Rule of Criminal Procedure 2.11(6)(a), for a judgment of acquittal, and for a new trial because the State provided inadequate evidence to establish that she confined K.T., an essential element of both kidnapping charges. The district court denied all of these motions. On our review, because Jackson Thomas has not pointed to reversible errors or an abuse of discretion committed by the district court, we affirm her convictions.

## I. Background Facts and Proceedings.

K.T. was twelve years old when she moved to Minnesota to live with her father and stepmother, Jackson Thomas. While in Minnesota, Jackson Thomas began using an electrical cord to hit K.T. The family moved to Cedar Rapids, and K.T.'s younger brother joined them. While in Cedar Rapids, the abuse continued and escalated. Jackson Thomas would use her hands, her teeth, a hammer, a screwdriver, a television remote, and electrical cords to beat K.T. almost every other day.

There were three instances, however, that stood out to K.T. because they occurred in the home's bathrooms.[1] The first occasion, Jackson Thomas told K.T. to go into the first-floor bathroom. Jackson Thomas followed her inside with a

---

[1] K.T. testified she was beat inside a bathroom three or four times, but she elaborated on only three instances.

hammer and electrical cords. She told K.T. to remove her clothing and then placed the clothing outside the bathroom door. Jackson Thomas then locked the bathroom door, which locked from the inside, and told K.T. to stand in the bathtub. Jackson Thomas yelled and cursed at K.T. and hit her, first with the electrical cord and then with the hammer. K.T. testified that it was bright outside when she went into the bathroom and dark when she left.

The second instance, Jackson Thomas again told K.T. to go into the bathroom. Jackson Thomas brought in a knife she used for chewing tobacco, an electrical cord, and a hammer. She again told K.T. to remove her clothes and put them outside the bathroom door. Jackson Thomas locked the door and told K.T. to get in the bathtub. At some point after Jackson Thomas began beating K.T., K.T. grabbed the knife and threatened to end her own life if Jackson Thomas did not stop. Jackson Thomas calmed K.T. down and promised to stop beating her. But, once K.T. turned over the knife, the beating resumed with the electrical cord and hammer. K.T. testified the beating continued for hours, again explaining the sky was bright when she went into the bathroom and dark when she came out.

When Jackson Thomas next kept K.T. in a bathroom, it was on the home's second floor. Jackson Thomas brought a hammer and electrical cord into the bathroom; there was already a screwdriver inside the room. She again instructed K.T. to take off her clothing, which was left on the floor inside the bathroom this time, and locked the door. During this incident, Jackson Thomas first struck K.T. with a hammer on her shoulders and hands. Then, using the electrical cord, she hit K.T.'s back and hands. Jackson Thomas picked up the screwdriver to stab K.T., who lifted her arm up to block the attack—the screwdriver went through K.T.'s

forearm, leaving both an entry and exit wound. Jackson Thomas continued to beat K.T. for what K.T. described at trial as "an eternity."

More than once, when Jackson Thomas was beating K.T. in an area of the home other than the bathroom, K.T. would run away and hide in the bushes outside. But when the three beatings occurred in the bathrooms, K.T. testified that even when Jackson Thomas would leave the bathroom momentarily, she could not leave the bathroom because she could not get her clothes on fast enough to escape.[2] K.T.'s younger sibling was also in the home during at least one of the bathroom instances; Jackson Thomas called for the younger child to bring her a hammer and cracked the door just enough to grab it before shutting the door again. K.T. testified that the beatings in the bathroom were worse than the beatings elsewhere in the home.

On October 11, 2019, K.T. asked Jackson Thomas how she wanted the child to cook that night's dinner; Jackson Thomas became angry and beat K.T. K.T.'s father came downstairs and saw what was going on and told Jackson Thomas to stop. The beating halted momentarily, but it continued again after K.T.'s father went to work until Jackson Thomas left the home to go to the store. Although K.T. finished cooking dinner, she packed a bag and left the home; eventually she arrived on foot at the Cedar Rapids Police Department (CRPD).

---

[2] During cross-examination at trial, when Jackson Thomas asked K.T. if she contemplated grabbing a towel or her clothes and running, K.T. answered:
> I was naked, and I know better not to run out there naked. . . . [T]here's so much time for her to walk in the dining room and grab [the electrical cord] and for me to, like, go at that time, 'cause the dining room is right there . . . [a]nd I can't run out—she can block me.

After K.T. described the months of abuse to CRPD officers, Jackson Thomas was interviewed by CRPD investigators.[3] She admitted to hitting K.T. in the bathroom and said she would confront K.T. in the bathroom so K.T. would not run away. She also admitted to brandishing the screwdriver to scare K.T. out of running.

Jackson Thomas was initially charged with two counts each of willful injury causing serious injury, willful injury causing bodily injury, and going armed with intent in November 2019. But the State amended the trial information in December to include a charge of kidnapping in the first degree. The amended trial information alleged Jackson Thomas did "confine or remove K.T. from one place to another, without having the authority nor the consent of K.T. to do so, while having the intent to inflict serious injury upon K.T. As a result, K.T. suffered serious injury and/or was intentionally subject to torture." The original minutes of testimony informed Jackson Thomas that K.T. would testify "that while being whipped with the electrical cord she is generally forced to stand in the bathtub, naked, while she is beaten and if she tries to block the strikes or defend herself she is beaten worse."

Jackson Thomas took depositions, including K.T.'s, in August 2020. She then moved to dismiss the kidnapping charge, alleging there was insufficient evidence in the minutes of testimony to support the confinement requirement for kidnapping. A hearing was held, and the court denied the motion, stating:

> The reference to allegedly holding the child in the bathtub and the, I guess, unrobing of the child are facts that could fit into one of these—one or more of these prongs, but it's ultimately a question for the jury to decide. The Defendant is on sufficient notice as to what

---

[3] Video and audio from this interview was recorded and played for the jury during trial.

those allegations are. And now, apparently with some depositions having taken place, the alleged victim has expanded on what those circumstances were. But for purposes of charging the offense [of first-degree kidnapping], I find that's sufficient.

The State later moved to amend the trial information once more, adding a charge of second-degree kidnapping; Jackson Thomas consented to the amendment.

Trial began in March 2021. After the State rested, Jackson Thomas moved for judgment of acquittal, arguing again the State had not proved the confinement necessary for either of the kidnapping charges. The court, "giving the State the benefit of all reasonable inferences and looking at the evidence in the light most favorable to them," denied Jackson Thomas's motion. The jury found Jackson Thomas guilty on all counts.

Finally, Jackson Thomas moved for a new trial, arguing that the jury's verdict on first- and second-degree kidnapping went against the weight of the evidence. Once again, the court denied Jackson Thomas's motions.

## II. Analysis.

On appeal, Jackson Thomas maintains the district court incorrectly denied her motions for dismissal, judgment of acquittal, and new trial.

Before delving into the specific motions, however, it helps to give an overview of kidnapping jurisprudence. Generally, "[a] person commits kidnapping when the person either confines a person or removes a person from one place to another, knowing that the person who confines or removes the other person has neither the authority nor the consent of the other to do so." Iowa Code § 710.1 (2019). The act must be accompanied by one of the following: "[t]he intent

to hold such person for ransom," "[t]he intent to use such person as a shield or hostage," "[t]he intent to inflict serious injury upon such person, or to subject the person to a sexual abuse," "[t]he intent to secretly confine such person," or "[t]he intent to interfere with the performance of any government function." *Id.* First-degree kidnapping occurs "when the person kidnapped, as a consequence of the kidnapping, suffers serious injury, or is intentionally subjected to torture or sexual abuse." *Id.* § 710.2(1). Relevant here, second-degree kidnapping occurs "where the kidnapper is armed with a dangerous weapon, or where the victim is under eighteen years of age other than a kidnapping by a parent or legal guardian whose sole purpose of the kidnapping is to assume custody of a victim under eighteen years of age." *Id.* § 710.3(1)

Because many crimes involve some sort of confinement or removal of the victim, our case law has established that to satisfy the confinement or removal requirements of section 710.1, there must be "more than the confinement or removal that is an inherent incident of commission of the crime." *State v. Rich*, 305 N.W.2d 739, 742, 745 (Iowa 1981); *accord State v. Mead*, 318 N.W.2d 440, 442, 445 (Iowa 1982) (applying the *Rich* test to crimes other than sexual abuse). There is "no minimum period of confinement or distance of removal . . . required for conviction of kidnapping" as long as the removal or confinement "definitely exceed[s] that normally incidental to the commission of [the crime]." *Rich*, 305 N.W.2d at 745; *accord State v. Mesenbrink*, No. 15-0054, 2015 WL 7075826, at *3–4 (Iowa Ct. App. Nov. 12, 2015) ("In applying the test, we consider not only whether the defendant confined someone longer than the duration of the underlying crime but also whether the quality or extent of the confinement was

much greater than necessary to accomplish the underlying crime."). "Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense." *Rich*, 305 N.W.2d at 745.

A. Motion to Dismiss.

We review the denial of a motion to dismiss made under Iowa Rule of Criminal Procedure 2.11(6) for correction of errors at law. *State v. Wells*, 629 N.W.2d 346, 351 (Iowa 2001). We accept all the facts alleged by the State in the trial information and minutes of testimony as true. *State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008). We will find error if these facts "do not constitute a crime as a matter of law." *Id.*

Because Jackson Thomas had not yet been charged with second-degree kidnapping at the time of the motion to dismiss, we need only consider the first-degree-kidnapping charge that her motion to dismiss addressed. Jackson Thomas argues on appeal, as she did in her initial motion, that the trial information and minutes of testimony make no mention of confinement or the *Rich* intensifiers necessary for confinement, and so do not establish that necessary element of first-degree kidnapping. Yet, in her motion, Jackson Thomas made no argument of any prejudice to her substantial rights.[4] *See State v. Brisco*, 816 N.W.2d 415, 420

---

[4] Under Iowa Rule of Criminal Procedure 2.5(5), "The term 'indictment' embraces the trial information." As for the contents of an indictment (or trial information), our rules provide:

> An indictment is a plain, concise, and definite statement of the offense charged. The indictment shall be signed by the foreman or forewoman of the grand jury. The names of all witnesses on whose

(Iowa Ct. App. 2012) (noting that on appeal the defendant did not argue the trial information prejudiced his substantial rights). But Jackson Thomas's argument misconstrues the purpose of the trial information and minutes of testimony, which "is to afford the person charged with an opportunity to prepare a defense" and generally alert the defendant "to the source and nature of the evidence against [them]." *Id.*; *accord State v. Dalton*, 674 N.W.2d 111, 120 (Iowa 2004); *State v. Kirby*, 391 N.W.2d 243, 245 (Iowa 1986) (noting the purpose underlying the requirements of trial information is to "protect[] a defendant from being misled by the charging instrument").[5] This is a case-by-case determination. *Dalton*, 674 N.W.2d at 120.

---

evidence the indictment is found must be endorsed thereon. The indictment shall substantially comply with the form that accompanies these rules. The indictment shall include the following:

a. The name of the accused, if known, and if not known, designation of the accused by any name by which the accused may be identified.

b. The name and if provided by law the degree of the offense, identifying by number the statutory provision or provisions alleged to have been violated.

c. Where the time or place is a material ingredient of the offense a brief statement of the time or place of the offense if known.

d. Where the means by which the offense is committed are necessary to charge an offense, a brief statement of the acts or omissions by which the offense is alleged to have been committed.

*No indictment is invalid or insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in a matter of form which does not prejudice a substantial right of the defendant.*

Iowa R. Crim. P. 2.4(7) (emphasis added).

[5] Jackson Thomas also objects to the district court's use of the term "notice pleading," a concept found in civil case law, during the motion hearing. *See Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004). But even if the district court used the wrong turn of phrase, it pulled the standard it used straight from Iowa Rule of Criminal Procedure 2.5. As such, we find no reversible error.

At the time of the motion, the trial information alleged Jackson Thomas did "confine or remove K.T. from one place to another, without having the authority nor the consent of K.T. to do so, while having the intent to inflict serious injury upon K.T. As a result, K.T. suffered serious injury and/or was intentionally subject to torture." The minutes of testimony further attested that K.T. was "forced to stand in the bathtub, naked, while she is beaten." And we are to consider both the trial information and the minutes of testimony when determining whether an accused has been adequately apprised of the crime charged. *State v. Grice*, 515 N.W.2d 20, 23 (Iowa 1994). Taking these assertions in the filings as true, Jackson Thomas was given ample warning of the charges levied at her—no additional mode of confinement or removal was later tacked on, nor were there additional witnesses to the kidnapping who were sprung on her at trial. And, at the motion hearing, Jackson Thomas made no argument of surprise. As a practical matter, at the time the motion was filed, the parties had engaged in discovery and several depositions, including that of K.T., where the kidnapping elements were explored. And while Jackson Thomas could question the sufficiency of the evidence later in the trial, this is not an appropriate basis for a motion to dismiss. *See State v. Doss*, 355 N.W.2d 874, 880 (Iowa 1984) ("A motion that merely challenges the sufficiency of the evidence supporting an indictment is not a ground for setting aside an indictment."). We agree with the district court that Jackson Thomas had sufficient notice of the criminal conduct alleged and the witnesses supporting the allegations. Overall, we find no reversible error in the court's denial of Jackson Thomas's motion to dismiss the first-degree kidnapping charge.

B. Motion for Judgment of Acquittal.

Jackson Thomas's next motion came at the close of the State's evidence, when she moved for a judgment of acquittal. Among other issues, Jackson Thomas argued there was insufficient evidence of confinement as required for both the first- and second-degree kidnapping charges. "In reviewing the trial court's ruling on the motion for judgment of acquittal, this court reviews the evidence in the light most favorable to the State, and all legitimate inferences that may reasonably be deducted therefrom are accepted." *State v. Schertz*, 328 N.W.2d 320, 321 (Iowa 1982) (internal citations omitted). We will uphold the district court's denial of the motion "if there is any substantial evidence in the record tending to support the charge." *Id.* Substantial evidence is that "which would convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt." *Id.*

Because the beatings occurred only in K.T.'s residence, Jackson Thomas contends the alleged confinement within the home was only incidental to the abuse. *See State v. Robinson*, 859 N.W.2d 464, 481–82 (Iowa 2015) ("Phrased somewhat differently, did the evidence of the tossing of the cell phone, the locking of the doors, the covering of the victim's mouth, and any additional confinement associated with movement of the victim from the hallway to the bedroom, all occurring within the enclosed apartment, provide a sufficient basis to allow the jury to regard the case as presenting more than sexual abuse but instead involving the much more serious crime of kidnapping with its substantially harsher penalties? We conclude that it does not."). Pointing to *Robinson* and *Rich* for guidance, Jackson Thomas contends the district court was wrong to deny her motion for

judgment of acquittal. To prove more than incidental confinement, the three prongs of the test require a showing of confinement or removal that (1) "substantially increases the risk of harm to the victim," (2) "significantly lessens the risk of detection," or (3) "significantly facilitates escape of the perpetrator." *Rich*, 305 N.W.2d at 745–46. Yet, as noted in *Robinson*, courts have shown

> some reluctance to find the independent crime of kidnapping when the additional confinement or removal occurs within an enclosed structure. Such additional confinement or movement within an enclosed structure may not be a sufficiently significant change in the risk environment to substantially increase the risk of harm, significantly lessen detection, or significantly aid escape.

859 N.W.2d at 480–81 (analyzing kidnapping confinement rules under other various jurisdictions); *cf. Harper v. State*, No. 17-0435, 2018 WL 4360892, at *6–7 (Iowa Ct. App. Sept. 12, 2018) (finding confinement occurred when the kidnappee was taken to the basement, allowing the defendant to "take his time" and "flee the area"). *Robinson*, then, does not foreclose the possibility that someone can be kidnapped when being confined or removed to a room in the same enclosed structure already occupied. It directs us only to look at the specific facts of the case and determine if the additional confinement satisfies the *Rich* test. And in the past, our supreme court has upheld a kidnapping conviction in a child-abuse case where there was confinement in the child's home. *See State v. Siemer*, 454 N.W.2d 857, 864–65 (Iowa 1990). In *Siemer*, a child handcuffed to a bed in the basement suffered horrific abuse. 454 N.W.2d at 864. Finding the confinement made the child an easy target for torture, the court held that evidence supported a finding of confinement that exceeded confinement normally incidental to the underlying crime of child abuse. *Id.* at 864–65. Further, the court concluded

"Siemer's confinement of [the child] substantially increased the risk of harm to the child and significantly lessened the risk that Siemer's infliction of chronic abuse would be detected." *Id.* From this record, there is evidence that could convince the jury Jackson Thomas confined K.T. on any one of the three instances where she was forced into the bathroom. She was told to disrobe, a state that stopped her from running. *See State v. Griffin*, 564 N.W.2d 370, 373 (Iowa 1997) ("So, by ordering [the kidnappee] to take off her clothes prior to the sexual assault, [the defendant] was able to keep her confined to the motel room prior to the assault, lowering his chances of detection and increasing the risk of harm to [the kidnappee]."). Further, Jackson Thomas admitted herself that the purpose of acting in the bathroom was to keep K.T. from fleeing.

Forcing K.T. into the bathroom also allowed Jackson Thomas to beat K.T. for hours at a time—from daylight to dark, longer than necessary for Jackson Thomas's other crimes. *See State v. Albright*, 925 N.W.2d 144, 155 (Iowa 2019) (affirming finding of guilt for kidnapping where a person was confined "for over thirteen hours" and stating "[t]his was not a 'minimal degree of confinement'" (citation omitted)), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189, 198 (Iowa 2022); *Rich*, 305 N.W.2d at 745 (dictating the confinement must "exceed that normally incidental to the commission of" the underlying crime); *State v. Poland,* No. 17-0189, 2018 WL 3302201, at *3–4 (Iowa Ct. App. July 5, 2018) (finding confinement under the kidnapping statute with evidence of locking the bedroom door and extending the assault for a longer time than necessary to commit the underlying offense); *Mesenbrink*, 2015 WL 7075826, at *4 ("Although [covering the kidnappee's mouth] alone is insufficient to constitute kidnapping, the

duration was about thirty minutes, which we opine is longer than necessary to commit willful injury causing serious injury."). Supporting the serious injury prong, K.T. testified that the beatings in the bathroom were worse than when she was elsewhere in the home. And, requiring K.T. to stand in the bathtub allowed Jackson Thomas to bludgeon the child more severely while making for an easier and more discrete cleanup of the blood. All of these details support that Jackson Thomas confined K.T. because her placement in the bathroom both significantly lessened the chances of detection and substantially increased the risk of harm to K.T. *See Albright,* 925 N.W.2d at 155 ("Our kidnapping cases have generally held that the increased-risk-of-harm prong of the *Rich* test is satisfied when the duration of confinement substantially exceeded the underlying crime.").

Thus, we find no error in the district court's denial of Jackson Thomas's motion for judgment of acquittal.

C. Motion for a New Trial.

Lastly, Jackson Thomas appeals the denial of her motion for a new trial because the verdict was contrary to the weight of the evidence. "A district court should grant a motion for a new trial only in exceptional circumstances," and we review the denial of such a motion for an abuse of discretion. *State v. Ary*, 877 N.W.2d 686, 705–06 (Iowa 2016). When considering the weight of the evidence, a court determines "whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict." *Id.* at 706 (citation omitted). Here we find ample evidence supporting the conviction for kidnapping.

Jackson Thomas argues there was no evidence showing "that placement of K.T. in the bathroom, even with the door locked and for several hours, created

any risk that was substantially or significantly different." But when considering the weight of the evidence, "[t]he question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice." *Ary*, 877 N.W.2d at 706 (citation omitted). In this case, other than using cross-examination to attack K.T.'s credibility over other statements, Jackson Thomas put on no evidence to combat K.T.'s assertions that the beatings in the bathroom were worse than those elsewhere in the house and that she was stripped of her clothing and placed in the bathroom to prevent her from running away, a reality not present elsewhere in the house. And Jackson Thomas's own words from the interview videos played during trial bolstered the State's case that locking the bathroom door would keep K.T. from running away. As noted above, there was credible evidence the confinement substantially increased the risk of harm and significantly decreased the risk of detection because K.T. could not leave the home. *See State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008) (holding a district court may grant a new trial on the ground the verdict was contrary to the weight of the evidence only in an extraordinary case in which "the evidence preponderates heavily against the verdict" rendered).

Finding no miscarriage of justice given the credible evidence supporting the kidnapping convictions, we do not find the court abused its discretion by denying Jackson Thomas's motion for a new trial.

**III. Conclusion.**

Because we find no reversible error in the district court's denial of Jackson Thomas's motions to dismiss under rule 2.11(6) or for judgment of acquittal, and we find no abuse of discretion in its denial of her motion for a new trial, we affirm.

**AFFIRMED.**